UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOE ALVAREZ,                                        )
                                                   )
                Plaintiff,                         )
                                                   )          CIVIL ACTION NO.
VS.                                                )
                                                   )          3:04-CV-2173-G
UNITED PARCEL SERVICE CO., d/b/a                   )
UPSCO UNITED PARCEL SERVICE                        )
CO.,                                               )
                                                   )
                Defendant.                         )

MEMORANDUM OPINION AND ORDER

Before the court is the motion of defendant United Parcel Service Co. ("UPS")

for summary judgment on all of the plaintiff's claims.  For the reasons stated below,

UPS's motion is granted.

I. BACKGROUND

This is an employment discrimination case brought by Joe Alvarez ("Alvarez")

against his former employer, UPS, an international package delivery company.

Declaration of Steve Huffman ("Huffman") ¶ 2, *located in* Appendix in Support of

Defendant's Motion for Summary Judgment and Supporting Brief ("Appendix") at 55.[1]

Alvarez is a Hispanic male and a resident of Texas.  Plaintiff's Original Petition ("Petition") ¶¶ 1, 9, *attached to* Notice of Removal.  On May 15, 1985, UPS hired Alvarez for the package cars department in Austin, Texas.  Petition ¶ 9.  *But see* Oral Deposition of Joe Alvarez ("Alvarez Dep.") at 26, *located in* Appendix at 8 (stating that Alvarez was hired by UPS in 1984).  Alvarez worked there until 1996, when he joined the feeder department.  Petition ¶ 9.  He continued in that position until his transfer to the Dallas/Fort Worth Airport ("DFW") on September 30, 2001.  *Id*.

Local 767 of the International Brotherhood of Teamsters ("IBT") represents all UPS drivers in north Texas, including Alvarez.  Defendant's Motion for Summary Judgment and Supporting Brief ("Defendant's Motion") at 3; Huffman ¶ 3.  As an IBT member, Alvarez's terms of employment were governed by a collective bargaining agreement known as the National Master United Parcel Service Agreement and Southern Regional Area Supplemental Agreement (collectively, the "CBA").  Huffman ¶ 3.  The CBA contained the following provision governing discipline and discharge:

---

[1]     Alvarez originally filed this case against UPS and Phil Russell, his supervisor.  However, the claims against Russell were dismissed by the court after Alvarez failed to show cause for his failure to effect service on Russell.  Order, February 22, 2005.

### ARTICLE 52 -- DISCHARGE OR SUSPENSION

(A)  The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of a complaint against such employee to the employee, in writing, . . . except that no warning notice need be given to an employee before discharge if the cause of such discharge is dishonesty . . ..

Appendix at 44B ("Article 52").

Article 51 of the CBA outlines the mandatory grievance and arbitration procedures applicable to a UPS employee.  Defendant's Motion at 3.  If an employee feels he has been disciplined improperly, he may file a grievance.  Huffman ¶ 5.  The first step is for the employee's union steward and supervisor to meet within five days of the grievance filing to attempt to resolve it.  *Id*. ¶ 6.  The next step is the local hearing.  Here, the local union business agent meets with UPS's district labor manager to attempt resolution.  *Id*.  If the grievance is not resolved at the local level, the matter is submitted to the Southern Region Area Parcel Grievance Committee ("SRAPGC"), a committee comprised of IBT and UPS representatives.  *Id*.  If the SRAPGC is deadlocked, the grievance is submitted to the Southern Region Deadlock Committee.  If that panel is deadlocked, the grievance is submitted to a National UPS/Teamsters Panel.  Finally, if there is still no resolution, the matter is sent to arbitration.  *Id*.

Documents proferred by UPS reflect that UPS, as an interstate carrier operating large commercial vehicles on public roadways, must comply with Department of Transportation ("DOT") regulations.  Huffman ¶ 7.  Such compliance requires that UPS drivers accurately log their driving time for DOT purposes via a database system ("IVIS").  *Id*. ¶¶ 7, 11.  In addition, drivers must accurately record their time for compensation purposes and to comply with provisions of the CBA governing breaks.  *Id*. ¶ 8.  Failure to accurately record driving time for DOT regulations or break time for compensation or CBA purposes ("stealing time") are violations constituting grounds for immediate discharge for dishonesty under Article 52.  *Id*. ¶ 8.

Due to the time-sensitive nature of UPS's delivery business, feeder drivers are expected to make their runs each day within a prescribed amount of time.  *Id*. ¶ 9.  When drivers do not make their run within the time allotted, they are considered "overallowed."  *Id*.  While being "overallowed" is permissible from time to time, UPS will take corrective and/or disciplinary action if it occurs on an excessive basis.  *Id*. ¶ 10.

In January 2002, Phil Russell ("Russell") became supervisor of the DFW feeder department.  Petition ¶ 10.  It was at this time that Alvarez felt he was being harassed about his race, but pretextually about his job performance.  *Id*.  In particular, Alvarez felt his co-workers received preferential treatment, Alvarez Dep. at 68-78; Petition

¶ 10; that Russell had an "aggressive" attitude towards Alvarez, Alvarez Dep. at 90;

Defendant's Motion at 11; and that Russell referred to another employee as a

"fucking Mexican."  Alvarez Dep. at 92-95.  In late 2002, Russell and Alvarez had an

altercation regarding unpaid wages, in which Alvarez threatened to file a grievance

against Russell.  Petition ¶ 11; Defendant's Motion at 14-15 (citing Alvarez Dep. at

144-45).

In the regular course of monitoring feeder driver performance, management

noticed that Alvarez was consistently overallowed for January 2003.  Defendant's

Motion at 5.  This prompted an audit of his IVIS records, which revealed Alvarez

making regular stops exceeding his allowed break time.  Declaration of Steve Walton

("Walton") ¶¶ 3-5, *located in* Appendix at 66-68.  In addition, UPS discovered that

Alvarez had a pattern of parking his rig while DOT records showed him driving.  *Id*.

¶ 5.

To confirm the discrepancies and overallowances, Steve Walton ("Walton")

and Rick Blakey ("Blakey"), feeder supervisors at UPS's DFW hub, followed Alvarez

on his route for three days in late January of 2003.  Petition ¶ 12; Walton ¶ 6.

Besides not logging out non-driving time as breaks or properly recording breaks for

DOT purposes, Alvarez charged UPS for over four hours of "unworked time" in the

three days he was observed.  Defendant's Motion at 6-7 (citing Alvarez Dep.,

Huffman, and Walton).  Subsequent to this surveillance, Alvarez was terminated

from his position at UPS under Article 52 for "stealing time" and falsifying DOT logs. *Id*. at 7; Walton ¶ 11; Huffman ¶ 13. Alvarez filed a grievance challenging this termination. Alvarez Dep. at 150; Appendix at 39, 53. This grievance was heard on February 18, 2003, before a panel of UPS and IBT representatives, and was ultimately denied. Defendant's Motion at 8 (citing Alvarez Dep. at 70-71, 152).

Alvarez filed charges of racial discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and received notice of right to sue. Petition ¶¶ 24, 32; EEOC Dismissal and Notice of Rights, *attached to* Petition as Exhibit A. On September 2, 2004, Alvarez filed a civil action against UPS in the 160th Judicial District Court of Dallas County, Texas. Notice of Removal ¶ 2; Petition. The case was removed to this court on October 6, 2004, on the basis of federal question jurisdiction. Notice of Removal. In his petition, Alvarez asserted claims of racial discrimination, in violation of the Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.051 (the "TCHRA"); retaliation, in violation of the TCHRA; violations of 42 U.S.C. § 1981 and Title VII;[2] intentional infliction of emotional distress; and negligent supervision of UPS's employees. *See generally*

---

[2]     Title VII is not mentioned in the petition. Attached to the petition, however is a notice of right to sue, issued by the EEOC, granting Alvarez the right to bring this private suit under Title VII. EEOC Dismissal and Notice of Rights, *attached to* Petition as Exhibit A. UPS addresses Alvarez's claims as falling under Title VII, Section 1981, and the TCHRA. Defendant's Motion at 8 n.8. Therefore, in an abundance of caution, the court will analyze Alvarez's claims as seeking relief under all three statutes.

Petition.  On August 26, 2005, UPS filed this motion for summary judgment.

Docket Sheet; Defendant's Motion.  Alvarez did not respond to the motion.

## II.  ANALYSIS

### A.  Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show

that no genuine issue exists as to any material fact and that the moving party is

entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).[3]  "[T]he substantive

law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The movant

makes such a showing by informing the court of the basis of its motion and by

identifying the portions of the record which reveal there are no genuine material fact

issues.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings,

depositions, admissions, and affidavits, if any, must demonstrate that no genuine

issue of material fact exists.  FED. R. CIV. P. 56(c).

Once the movant makes this showing, the nonmovant must then direct the

court's attention to evidence in the record sufficient to establish that there is a

---

[3]     The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this

burden, the "opponent must do more than simply show . . . some metaphysical doubt

as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*

*Corporation*, 475 U.S. 574, 586 (1986).  Instead, the nonmovant must show that the

evidence is sufficient to support a resolution of the factual issue in his favor.

*Anderson*, 477 U.S. at 249.  The nonmovant cannot survive a motion for summary

judgment by merely resting on the allegations in his pleadings.  *Isquith for and on behalf*

*of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488

U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

        Although the court may not enter a default summary judgment by virtue of

Alvarez's failure to respond, it may accept as undisputed the facts described in

support of UPS's motion.  *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir.

1988).  Summary judgment is proper if, after adequate time for discovery, the

affidavits, depositions, answers, and admissions on file fail to establish the existence

of an element essential to Alvarez's case and as to which he will bear the burden of

proof at trial.  *Celotex*, 477 U.S. at 322-323.

## B.  Alvarez's Discrimination and Retaliation Claims

        "[T]he law governing claims under the TCHRA and Title VII is identical."

*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999).  In

addition, in cases involving race discrimination, the same analysis applies to claims

arising under 42 U.S.C. § 1981.  See *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996).  Therefore, to avoid unnecessary repetition, the court will analyze all claims utilizing the case law construing Title VII.  See *Shackelford*, 190 F.3d at 403 n.2.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment.  *Fitzgerald v. Secretary, United States Department of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir.1997).  Title VII also prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).

1.  *Discrimination*

Prior to the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), courts analyzed discrimination cases using a shifting burden framework as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and developed in subsequent cases.  Proof of discrimination was available in two ways -- direct evidence or by an indirect or inferential method of proof -- which resulted in different methodologies.  Discrimination could be shown indirectly by following the "pretext" method set out in *McDonnell Douglas*, but if the plaintiff produced direct evidence of discrimination, and the employer asserted that the same adverse employment

decision would have been made regardless of discrimination, the mixed-motive

analysis set out in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), applied.

In *Desert Palace*, the Supreme Court unanimously held that in the context of

Title VII, as amended by Congress in 1991, "direct evidence of discrimination is not

required in mixed-motive cases . . . ." 539 U.S. at 101-102.  See also *Stegall v. Citadel*

*Broadcasting Company*, 350 F.3d 1061, 1066-67 (9th Cir. 2003) (applying *Desert*

*Palace* after summary judgment was granted on the plaintiff's Title VII and state law

discrimination claims, and analyzing the plaintiff's case under both mixed-motive and

single-motive (pretext) theories).  As the court in *Louis v. East Baton Rouge Parish*

*School Board*, 303 F. Supp. 2d 799 (M.D. La. 2003), observed, "[b]ecause the direct

evidence requirement has been removed from mixed-motive[s] cases, it is now harder

to draw a distinction between *McDonnell Douglas* and mixed-motive[s] cases." 303

F. Supp. 2d at 803-04.

The Fifth Circuit has adopted use of a "modified McDonnell Douglas

approach" in cases where the mixed-motive analysis *may* apply.  *Keelan v. Majesco*

*Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing  *Rachid v. Jack in the Box, Inc.*,

376 F.3d 305, 312 (5th Cir. 2004)) (emphasis added).  Under this framework,

> the plaintiff must still demonstrate a prima facie case of
> discrimination; the defendant then must articulate a
> legitimate, non-discriminatory reason for its decision to
> terminate the plaintiff; and, if the defendant meets its
> burden of production, "the plaintiff must then offer
> sufficient evidence to create a genuine issue of material fact

'either (1) that the defendant's reason is not true, but is
instead a pretext for discrimination (pretext alternative); or
(2) that the defendant's reason, while true, is only one of
the reasons for its conduct, and another "motivating
factor" is the plaintiff's protected characteristic
(mixed-motive[s] alternative).'

*Rachid*, 376 F.3d at 312 (quoting *Rishel v. Nationwide Mutual Insurance Company*, 297

F. Supp. 2d 854, 865 (M.D.N.C. 2003)).

Therefore, the first step for either pretext or mixed motive analysis requires

that the plaintiff establish a *prima facie* case of discrimination.  *Id*.; *Keelan*, 407 F.3d at

341.  If the plaintiff presents a *prima facie* case, a presumption of discrimination arises.

*Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993).  This *prima facie*

case requires a showing that the plaintiff (1) was a member of a protected group,

Hispanic; (2) was qualified for his position; (3) was dismissed or suffered an adverse

employment action; and (4) the defendant sought to replace him with a similarly

qualified white employee.  See, *e.g.*, *Ward v. Bechtel Corporation*, 102 F.3d 199, 202

(5th Cir. 1997).  That is, Alvarez must prove that "an employee outside of his

protected class received better treatment on circumstances nearly identical to his."

*Bowers v. Principi*, 70 Fed. Appx. 157, 2003 WL 21554567, at *1 (5th Cir. July 3,

2003) (per curiam) (citation omitted); see also *Bryan v. McKinsey & Company, Inc.*,

375 F.3d 358, 360 (5th Cir. 2004) (rephrasing the fourth factor to be whether

plaintiff "was replaced by someone outside the protected class, or, in the case of

disparate treatment, shows that other similarly situated employees were treated more favorably").

Alvarez has not sustained this burden.  Specifically, he has produced no evidence that similarly situated non-Hispanic co-workers received better treatment in nearly identical circumstances.  In his deposition, Alvarez identified three co-workers who he claimed received more favorable treatment in nearly identical circumstances.  Alvarez Dep. at 68-78.  However, the evidence in the record indicates that the circumstances of these other employees were not similar.  Defendant's Motion at 9-10.  How Kiv ("Kiv"), an Asian employee, was terminated under Article 52, but for involvement in an unreported accident, not dishonesty.  Alvarez Dep. at 69-70.  In contrast to Alvarez, Kiv successfully challenged his termination via grievance procedures prescribed by the CBA.  Alvarez claimed that a white employee, Jeffrey Bellieu ("Bellieu"), drove too slowly in an effort to increase the time he was paid while driving for UPS.  *Id*. at 77-78.  Bellieu's behavior, however, is not identical to Alvarez's, for there is no indication in the record that Bellieu falsified DOT documentation.  Finally, Alvarez claimed that Merik Kolinko ("Kolinko"), a white co-worker, took breaks while on duty.  *Id*. at 76.  Alvarez has submitted no evidence in support of this allegation, however, and UPS management had no information that Kolinko was dishonest.  Huffman ¶ 15.  In addition to clarifying the behavior of the comparators cited by Alvarez, UPS has identified several white feeder drivers who

were terminated upon discovery of conduct identical to Alvarez's.  *Id*. ¶ 14 (listing

five individuals).  Given this evidence, Alvarez has not established a *prima facie* case to

make out a Title VII claim of racial discrimination.  Summary judgment will therefore

be entered in favor of UPS on Alvarez's claim of racial discrimination.

## 2.  *Retaliation*

A charge of retaliation follows a burden-shifting analysis similar to racial

discrimination.  See *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir.

1998); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).  To establish a

*prima facie* case of unlawful retaliation under Title VII, Alvarez must demonstrate that

(1) he engaged in activity protected by Title VII; (2) an adverse employment action

occurred; and (3) a causal link existed between participation in the protected activity

and the adverse employment action.  See *Webb v. Cardiothoracic Surgery Associates of*

*North Texas, P.A.*, 139 F.3d 532, 540 (5th Cir. 1998); *Sherrod*, 132 F.3d at 1122 n.8;

*Long*, 88 F.3d at 304; *Collins v. Baptist Memorial Geriatric Center*, 937 F.2d 190, 193

(5th Cir. 1991), *cert. denied*, 502 U.S. 1072 (1992).

Once the plaintiff establishes his *prima facie* case, the defendant has the burden

of production to articulate a legitimate nondiscriminatory reason for the adverse

employment action.  *Winter v. Bank of America, N.A.*, No. 3:02-CV-1591-L, 2003 WL

23200278, at *10 (N.D. Tex. Dec. 12, 2003).  If the defendant meets this burden,

the ultimate question becomes whether "'but for' the protected activity, the [adverse

employment action] would not have occurred, notwithstanding the other reasons advanced by the defendant." *Vadie v. Mississippi State University*, 218 F.3d 365, 374 (5th Cir. 2000) (quoting *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983), *cert. denied*, 531 U.S. 1113 (2001)); see also *Long*, 88 F.3d at 305 n.4 ("even if a plaintiff's protected conduct is a substantial element in a defendant's [adverse employment] decision . . ., no liability for unlawful retaliation arises if the [same decision would have been made] even in the absence of the protected conduct"). The requirement of showing "but for" causation is more stringent than the minimal causation required to make the plaintiff's *prima facie* case. *Hall v. Pitney Bowes, Inc.*, No. 3:02-CV-2756-B, 2004 WL 389093, at *10 (N.D. Tex. Feb. 27, 2004).[4]

Alvarez has, for reasons similar to the analysis above on the claim of racial discrimination, failed to establish a *prima facie* case of retaliation.  Alvarez bases his claim of retaliation on his discharge following an altercation between himself and his

---

[4] The Fifth Circuit has explicitly reserved the question whether the mixed-motive analysis, as explicated in *Rachid*, applies to retaliation claims.  See *Septimus v. University of Houston*, 399 F.3d 601, 607 n.7 (5th Cir. 2005).  While some district courts have found the analysis inapplicable, *Funai v. Brownlee*, 369 F. Supp. 2d 1222, 1227-28, 1234 (D. Haw. 2004), other courts have chosen to utilize it. *Calmat Company v. U.S. Department of Labor*, 364 F.3d 1117, 1123 n.4 (9th Cir. 2004); *Warren v. Terex Corporation*, 328 F. Supp. 2d 641, 646 (N.D. Miss. 2004); *Bergen v. Continental Casualty Company*, 368 F. Supp.2d 567, 572-73 (N.D. Tex. 2005) (Sanders, J.); *Cones v. Duke Energy Corporation*, 367 F. Supp. 2d 1092, 1100 (S.D. Tex. 2005); *Knighten v. State Fair of Louisiana*, No. 5:03-CV-01930, 2005 WL 1629933, at *4 (W.D. La. July 1, 2005).  Because this case can be decided on other grounds, the court refrains from making any determination whether the modified *McDonnell Douglas* analysis applies to retaliation claims.

supervisor, Russell.  Defendant's Motion at 14; Petition ¶ 30.  However, Alvarez

admits that at no point during this altercation did he allege discrimination based on

race or any other protected classification.  Defendant's Motion at 14-15; Alvarez

Dep. at 144-45.  *But see* Petition ¶ 30 ("Defendants illegally retaliated against

Plaintiff by . . . firing Plaintiff solely because he had confronted Russell about the

racial harassment of himself and other minority employees.").  Instead, this

disagreement resulted from the fact that Russell refused to pay Alvarez for a half hour

of work that Alvarez was allegedly owed.  Alvarez Dep. at 141-42.  Alvarez stated

that he would file a grievance against Russell for harassment due to this nonpayment,

not because he was being harassed for being Hispanic.  Defendant's Motion at 14-15

(quoting Alvarez Dep. at 144-45).  This does not constitute protected activity,

thereby preventing the establishment of a *prima facie* case of retaliation.  See, *e.g.,*

*Moore v. United Parcel Service, Inc.*, No. 04-11403, 2005 WL 2436922, at *4 (5th Cir.

Oct. 4, 2005) (per curiam) (filing grievance that UPS violated agreement with union

did not constitute protected activity under Title VII because employee did not

oppose/protest racial discrimination or any unlawful employment practice); *Watts v.*

*Kroger Company*, 170 F.3d 505, 511 (5th Cir. 1999) (complaint to superior in which

plaintiff merely mentioned comments about her "personal life" and did not make

reference to sexual harassment did not constitute protected activity under Title VII);

*Callahan v. Bancorpsouth Insurance Services of Mississippi, Inc.*, 244 F. Supp. 2d 678,

683-84 (S.D. Miss. 2002) (finding that an employee's complaints about wages did not constitute protected activity because her statements did not "sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner"), *aff'd*, 61 Fed. Appx. 121 (5th Cir. 2003). Accordingly, UPS is entitled to summary judgment in its favor on Alvarez's retaliation claim.

C.   Alvarez's Remaining State Law Claims

UPS contends that Alvarez's intentional infliction of emotional distress and negligent supervision claims are preempted by § 301 of the Labor Management Relations Act ("LMRA").  Section 301 provides:

> Suits for violation of contracts between an employer and a
> labor organization representing employees in an industry
> affecting commerce as defined in this chapter, or between
> such labor organizations, may be brought in any district
> court of the United States having jurisdiction of the
> parties, without respect to the amount in controversy or
> without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Congress passed § 301 to allow "federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements."  *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 451 (1957).  The Supreme Court has thus determined that if a state law cause of action arising out of contract or tort is inextricably intertwined with interpretation of the terms of the collective bargaining

- 16 -

agreement, the state law claim is preempted by § 301.  *United Steelworkers of America,*

*AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 369 (1990); *Lingle v. Norge Division of Magic*

*Chef, Inc.*, 486 U.S. 399, 405-06 (1988); *Allis-Chalmers Corporation v. Lueck*, 471 U.S.

202, 220 (1985); see also *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 97

(5th Cir. 1996) (citing *Thomas v. LTV Corporation*, 39 F.3d 611, 616 (5th Cir. 1994));

*Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1089 (5th Cir. 1991); *Baker v. Farmers*

*Electric*, 34 F.3d 274 (5th Cir. 1994)).   In those cases where resolution of the state law

claim does not require an interpretation of the collective bargaining agreement, the

claim is deemed "independent," and is not preempted.  See *Roadway Express*, 931 F.2d

at 1089; see also *Lingle*, 486 U.S. at 410 ("as long as the state-law claim can be

resolved without interpreting the agreement itself, the claim is 'independent' of the

agreement for § 301 pre-emption purposes").  But see *Medrano v. Excel Corporation*,

985 F.2d 230, 233 (5th Cir.) (holding that "[u]nlike the plaintiff's claim in *Roadway*

*Express* . . ., [plaintiff]'s claim is indeed inextricably intertwined with a consideration

of the terms of the CBA"), *cert. denied*, 510 U.S. 822 (1993).

### 1.  *Intentional Infliction of Emotional Distress*

A plaintiff pursuing a claim against his employer for intentional infliction of

emotional distress has the burden of proving wrongful conduct by that employer.  See

*Dancy v. Fina Oil & Chemical Company*, 921 F. Supp. 1532, 1536 (E.D. Tex. 1996)

(citing *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633 (5th Cir. 1994)).  "The

plaintiff must establish not that the defendant's conduct was wrongful in some abstract sense, but wrongful under the circumstances." *Id*. "[T]he collective bargaining agreement is a crucial component of these circumstances." *Id*. Because emotional distress claims normally require an analysis of an extant CBA, in this circuit the LMRA has been held to preempt state law emotional distress claims that are related to employment discrimination. See *Barrow v. New Orleans Steamship Association*, 10 F.3d 292, 300 (5th Cir. 1994); *Thomas*, 39 F.3d at 619; *Reece v. Houston Lighting & Power Company*, 79 F.3d 485, 487 (5th Cir.), *cert. denied*, 519 U.S. 864 (1996); *Stafford v. True Temper Sports*, 123 F.3d 291, 296 (5th Cir. 1997).

The conduct of which Alvarez complains and upon which he bases his claim for emotional distress undoubtedly relates to employment discrimination. *See* Alvarez Dep. at 156-57 (discussion of facts giving rise to emotional distress claim as a result of alleged discriminatory discharge). Here, as in *Stafford*, "[t]he emotional distress claim is clearly part of the same matter as the employment discrimination claim, and would likely never have come into existence but for the original dispute . . . and is far from peripheral to the central employment issue." *Stafford*, 123 F.3d at 296. Accordingly, the LMRA preempts Alvarez's state law claim for intentional infliction of emotional distress.

## 2. *Negligent Supervision*

Alvarez's final claim is that UPS was negligent in supervising and controlling Russell and other supervisors or employees who engaged in the allegedly discriminatory conduct. Petition ¶¶ 50-61. To prevail on this claim, Alvarez must show that UPS hired and retained these individuals who were incompetent or unfit for the job "as a result of a failure to make a reasonable inquiry into the individual's competence and qualifications." *Sanders v. Casa View Baptist Church,* 898 F. Supp. 1169, 1179 (N.D. Tex. 1995), *aff'd,* 134 F.3d 331 (5th Cir.), *cert. denied sub nom. Baucum v. Sanders*, 525 U.S. 868 (1998).

Any duty to effectively supervise employees, or breach of such duty, is inextricably intertwined with the issue of discipline. *Todd v. Safeway, Inc.*, No. 3:98-CV-02369, 1998 WL 556577 at *5-6 (N.D. Cal. Aug. 28, 1998). Here, the CBA does specifically address the issue of discipline and related procedures. *See generally* Article 52. Thus, in determining whether UPS had a duty and/or breached any duty of proper supervision, it would be necessary to consider the disciplinary provisions of the CBA. Consequently, the claim is preempted by § 301 of the LMRA. See also *Busey v. P.W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1053 (N.D. Cal. 2005) (finding that § 301 preempted a negligent supervision claim based upon the defendant's failure to train its employees "to adhere to 'company principles with

respect to reviewing and/or disciplining employees and communicating professionally with other company personnel'").

### 3. *Disposition of Claims*

Based on the summary judgment record, Alvarez's state law claims are not independent of conduct covered by the collective bargaining agreement, *i.e.*, UPS's disciplinary procedures and Alvarez's discharge under Article 52.  The state law claims of intentional infliction of emotional distress and negligent supervision require a determination under the collective bargaining agreement of whether the termination was wrongful and whether UPS adhered to its disciplinary procedures.

Therefore, the court finds that Alvarez's claims for intentional infliction of emotional distress and negligent supervision are preempted by § 301.  UPS is entitled to summary judgment on these claims.

### D.  Attorney's Fees

UPS seeks to recover its attorney's fees and costs in defending Alvarez's claims.  Defendant's Motion at 20.  In Title VII and TCHRA claims, a prevailing defendant is entitled to recover attorney's fees only if it is shown that the plaintiff's claim is frivolous, unreasonable or without foundation.  *Harris v. Plastics Manufacturing Company*, 617 F.2d 438, 440 (5th Cir. 1980).  The court finds that Alvarez's claims, while insufficient to survive summary judgment, were not frivolous, unreasonable, or

without foundation.  Therefore, the court denies UPS's request for attorney's fees and costs.

### III.  <u>CONCLUSION</u>

For the reasons set forth above, UPS's motion for summary judgment is **GRANTED**.  Judgment will be entered that Alvarez take nothing from UPS on his claims in this case.

**SO ORDERED**.

October 26, 2005.

_____
A. JOE FISH
CHIEF JUDGE